## In re Appeal of William Gunser

*Don F. Marshall,* for William Gunser.

*Stephen B. Harris,* for Upper Makefield Township Board of Supervisors.

*George M. Bush,* for Upper Makefield Zoning Hearing Board.

BIEHN, *J.,* November 29, 1994—The Board of Supervisors of Upper Makefield Township has appealed to the Commonwealth Court from our order entered on October 28, 1994. The sole issue presented is whether or

not this court erred in striking a condition imposed by the Upper Makefield Township Zoning Hearing Board, that there be no live bands, amplified music or other accessory entertainment on the premises in question.

The background of this case is as follows. William Gunser, one of the owners of the subject property and the original appellant, applied to the board to be allowed to conduct haunted hayrides and related activities on his 93-acre farm, county tax parcel no. 47-8-55. The property is located in the conservation management zoning district. Appellant is the third generation to live at and farm the premises. He devotes his time to crop farming.

In recent years, due to his age and health problems, appellant has been forced to do less farming. The revenue obtained from the haunted hayrides was to supplement appellant's income and enable him to keep the farm rather than be forced to sell the land to developers.

The board, after conducting a hearing on September 30, 1993, upheld and affirmed the cease and desist order issued by the zoning officer. However, "because of the particular facts in this case," the board granted a use variance allowing an A-1 accessory use for a haunted hayride. (Decision of the Zoning Hearing Board, November 22, 1993, p. 4.)

The board attached nine "conditions and limitations" to the variance. Appellant appealed to this court from the board's decision. Several conferences were held between the parties during which all of the issues were resolved except one, that is whether there could be any live bands, amplified music or other accessory entertain-

ment on the subject property. The board held that there could not. This court struck the condition.

Where, as here, the court took no additional evidence, our scope of review is limited to a determination of whether the board abused its discretion or committed an error of law. *Appeal of deBotton,* 81 Pa. Commw. 513, 516, 474 A.2d 706, 707 (1984). The board abused its discretion if its findings of fact are not supported by substantial evidence. Substantial evidence means evidence which a reasonable man would accept to establish the fact in question. *Id.* at 516, 474 A.2d at 708.

Under the Pennsylvania Municipalities Planning Code, a zoning hearing board, in granting a variance, "may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of [the MPC] and the zoning ordinance." 53 P.S. § 10910.2(b). "The conditions imposed must bear a reasonable relation to the protection of the public interest, ... and be reasonable under the facts of the case." *In re Appeal of the Board of Supervisors of Solebury Township,* 49 Pa. Commw. 267, 271, 412 A.2d 163, 165 (1980). (citations omitted)

We found in the instant case that the condition prohibiting live bands or amplified music had no reasonable relation to the protection of the public nor was it reasonable under the facts of the case.

At the hearing, appellant testified as follows:

"Q. Have you ever had any complaints about the music?

"A. Not to me, no. With the music, I have two flatbed trailers that I put plywood on, and we enclose the back of that to try to cut down any sound traveling off of the place—

"Q. And you are—

"A. —to keep the volume down....

"Q. Is there any—you told us that with regard to the band, that you had, like, a little stage which you said helps to control the sound. Is there any regulation over the sound other than the band deciding that it sounds the best?

"A. That's the first thing I will—you have to sign a contract with these bands and before I even hire them, I tell them that I want the sound kept at a minimum. If I can hear them at the loading area, then I—which I've had no problem with—then I'll tell them to back off....

"Q. Does the noise carry and how far, do you know, if it carries, with regard to the band?

"A. Well, the neighbors have been supportive. They can tell you better probably than I can. They say it's no problem.

"Q. You never went out when all the bands are playing to see how the noise carries in the neighborhood?

"A. Well, I'm on the farm and I can—when I go far enough away from them on the farm yet, I can't hear them." (N.T., September 30, 1993, pp. 14, 30, 33-34.)

In addition, when asked by the board's solicitor whether anyone in the audience opposed appellant's application, there was no response. Furthermore, two of appellant's neighbors testified on his behalf, one of whom stated the following:

"MR. BUSH: What would you like to say, please?

"MR. LOGAN: I'm one of three neighbors that are close to the Gunser farm and this is two years in passing that this has been productive. I'm also a person who

enjoys very much my privacy. The way I look at it is the operation that's occurred over the last two years on this hayride, which was pretty much identical to what's been described here for the third year, has in no way at all infringed on my privacy or my well-being in any way at all....

"... No one here before last week has complained about the noise or about the traffic or anything else. As a matter of fact, most of the neighbors seem to be more supportive of it than anything else. I just think it would be a tragedy personally for Mr. Gunser if he could not find this alternative means of raising money for paying his tax burden. It would be one more large piece of land that would be that much closer to being gone forever." (N.T., September 30, 1993, pp. 51-53.)

It is clear from the above that the board's prohibition of a band on the subject property was not a reasonable condition. It bore no relation to the protection of the public interest and was not reasonable under the facts of this case. The band posed no nuisance to the neighborhood nor was it detrimental to the health, safety or general welfare of the community. The sound was confined and could not be heard off of the farm property. In fact, it seemed the consensus of the neighborhood that it was preferable to have the farm used for haunted hayrides, with a band, for a few weeks a year rather than have appellant lose the farm to developers because he could not pay his taxes.

Consequently, this court found that the imposition of the condition prohibiting a live band, amplified music or other entertainment was improper, and therefore, it was stricken.